**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JACK JORDAN and LYN JORDAN, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| FOUR WINDS INTERNATIONAL, | ) Case No. 1:08-cv-129-SJM |
| INC., FOUR WINDS INTERNATIONAL | ) |
| CORPORATION and MEYERS RV | ) |
| CENTERS, LLC. and ED SHULTS | ) |
| CHEVROLET, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., District J.,

This civil action arises out of an incident occurring on June 15, 2006 in which a catastrophic fire destroyed a recreational vehicle ("RV") owned by Plaintiffs, Jack and Lyn Jordan, as well as all of the RV's contents.  Plaintiffs claim that the fire resulted from a defect in the vehicle.  Their amended complaint asserted claims premised on strict liability, negligence, and breach of warranty against Four Winds International, Inc. and Four Winds International Corporation (collectively referred to as "Four Winds"), which manufactured the RV, and Defendant Meyers RV Centers, LLC ("Meyers"), which sold the RV to Plaintiffs.  This Court's jurisdiction is premised upon 28 U.S.C. § 1332, as there is complete diversity of citizenship among the parties and the amount in controversy (exclusive of interest and costs) exceeds $75,000.

Pending before the Court are motions for summary judgment filed on behalf of Defendants Four Winds and Meyers relative to the Plaintiffs' sole remaining claim for breach of warranties.  For the reasons set forth below, these motions will be granted.

## I.  STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be entered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In adjudicating a Rule 56 motion, we must review the evidence in the light most favorable to Plaintiffs, the non-moving party, and draw all reasonable inferences in their favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *O'Connor v. City of Philadelphia*, 233 Fed. Appx. 161, 164, 2007 WL 1379960 at **3 (3d Cir.  May 11, 2007).

## II.  BACKGROUND

On May 22, 2004, Plaintiffs signed an agreement with Meyers to purchase a 2004 Four Winds International Infinity Motor Home (the "RV").  This Vehicle Cash Purchase Agreement (the "Agreement") outlines numerous terms of the RV purchase and indicates that the total amount of the purchase price was $101,313.00.  (Ex. B to Mot. for Summ. Judg. [43-2] at p. 6.)  Included on the reverse side of the Agreement are nine separate paragraphs setting forth "**ADDITIONAL TERMS OF AGREEMENT**."  Paragraph 5 is entitled "**Disclaimer of Warranties**," and states:

> I UNDERSTAND THAT YOU EXPRESSLY DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND THAT YOU NEITHER ASSUME NOR AUTHORIZE ANY OTHER PERSON TO ASSUME FOR YOU ANY LIABILITY IN CONNECTION WITH THE SALE OF THE VEHICLE, except as otherwise provided in writing by YOU in an attachment to this Agreement or in a document delivered to ME when the vehicle is delivered.

(*See* Def.'s Mot. for Summ. Judg. Ex. B [43-2] at p. 7.)  Paragraph 9 reads:  "**New York Law Applies.**  You and I agree that this Agreement is governed by New York State Law."  (*Id.*)

2

Various forms and documents relating to the sale – including the owner's registration card, a check used to pay the balance of the purchase price, and a "New York Law 198-a" form – indicate that the transaction was completed on June 12, 2004. (Ex. A to Pls.' Mem. in Opp. to Def.'s Mot. for Summ. Judg. [48-1] at 71-73.)  Plaintiffs also took delivery of the RV on that date.

The vehicle in question was covered by a "New Recreational Vehicle Limited Warranty" issued by Four Winds, which limited the coverage of any and all warranties associated with the RV to two years from the date of delivery or 24,000 miles.  (*See* Ex. A to Def.'s Mot. for Summ. Judg. [43-1] at p. 3.)  The limited warranty further restricted the limitations period associated with those warranties to a period of one year following expiration of the warranty coverage.  (*Id*. at p. 5.)  Thus, given that the Plaintiffs took possession of the RV on June 12, 2004, the limited warranties by their terms lapsed no later than June 12, 2006 and any warranty claims arising during that time had to be enforced no later than June 12, 2007.

On June 15, 2006 – just three days after their warranty coverage lapsed under the terms of the New Recreational Vehicle Limited Warranty, a defect in the Plaintiffs' RV caused a catastrophic fire.  Although Plaintiffs were not injured, the RV and all of its contents (including Plaintiffs' warranty information) was destroyed.  Plaintiffs submitted a claim with their insurer and this subrogation lawsuit followed on May 1, 2008.

Plaintiffs filed their first Amended Complaint on June 11, 2008, asserting four causes of action against the Defendants.  Count I alleged a claim of strict liability against Four Winds and Meyers.  Count II alleged negligence against Meyers and another entity known as "Ed Shults Chevrolet, Inc.."[1]  Count III alleged negligence

---

[1] According to the Amended Complaint, Defendant Ed Shults Chevrolet, Inc. performed maintenance and repair work on the RV on at least five occasions between July 2004 and July 2005 including, on or about November 3, 2004, repairs to the RV's fuel system.  (Amended Complaint [10] at ¶ 19.)  Plaintiffs' sole claim against Ed Shults Chevrolet, Inc. has been dismissed, *see infra*, and that entity is no longer a party to this lawsuit.

against Four Winds.  Count IV alleged breach of warranty against Four Winds and Meyers.  Defendants filed motions to dismiss these claims pursuant to Fed. R. Civ. P. 12(b)(6).

This Court subsequently granted the Defendants' motions to dismiss relative to Counts I through III of the Amended Complaint on the grounds that any tort claims seeking recovery for damages to the product itself were barred by the economic loss doctrine.  The Court denied the Defendants' motions to dismiss insofar as they related to Count IV and instead permitted discovery on issues pertinent to the breach of warranty theory.

Defendants Four Winds and Meyers have now moved for summary judgment on the Plaintiffs' remaining breach of warranty claims.  Meyers RV contends that there can be no liability on its part because it issued no express warranty and in fact expressly disclaimed any and all warranties, express or implied, on the vehicle.  Four Winds contends that the incident which gives rise to the Plaintiffs' warranty claim occurred only after the express and implied warranties on the vehicle had expired.  In addition, Four Winds argues that the limited warranty on the RV required that any suit for breach of warranty be brought within one year of the expiration of the warranty coverage which, in this case, meant no later than June 12, 2007.  Because this lawsuit was not filed until May 1, 2008, Four Winds contends that Plaintiffs' claim is time-barred.

Plaintiffs have filed a memorandum in opposition to the pending summary judgment motions, arguing that the waivers and/or limitations of the Defendants' warranties are invalid and therefore of no effect, either because they lack the requisite conspicuousness or because they are unconscionable.  The issues have been fully briefed and are now ripe for disposition.

## III.  DISCUSSION

A.    Choice of Laws

The first question which we must address is the applicable source of law governing the present dispute.  Defendants contend that Pennsylvania law applies, while Plaintiffs maintain that New York law controls.  Because our analysis concerning the claim against Meyers differs somewhat from our analysis of the claim against Four Winds, we consider each choice-of-law issue separately.

1.    *The Claim Against Meyers*

In a diversity action such as this, a federal court "must apply the choice of law rules of the forum state to determine what law will govern the substantive issues of a case." *Warriner v. Stanton*, 475 F.3d 497, 499-500 (3d Cir.2007) *(citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  "Because choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case, a principle known as 'depecage.'" *Berg Chilling Systems, Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) (*citing Compagnie des Bauxites v. Argonaut-Midwest Ins. Co.*, 880 F.2d 685, 691 (3d Cir.1989)).

Under Pennsylvania choice of law principles, "the first question to be answered in addressing a potential conflict of laws dispute is whether the parties explicitly or implicitly have chosen the relevant law." *Atlantic Pier Assocs., LLC v. Boardakan Rest. Partners*, 647 F. Supp. 2d 474, 486 n. 13 (E.D. Pa. 2009) (*quoting Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161, 164 (3d Cir. 1999)).  As a general matter, if the parties have agreed to the applicable law, that agreed upon law should be given effect.  *Id*. (*citing Assicurazioni Generali, S.P.A.*, *supra*, at 164).

In this case, the Agreement between Plaintiffs and Meyers contained an express provision stating:  "New York Law Applies.  You and I agree that this Agreement is governed by New York State Law."  (Ex. B to Mot. for Summ. Judg. [43-2] at p. 7.) Based on this provision, Plaintiffs argue that New York law controls the present dispute.

Meyers, on the other hand, argues that this provision has no applicability because it is being sued not for breach of contract but, rather, for breach of implied warranty.

Although Meyers is not being sued for direct breach of the Purchase Agreement, Meyers has invoked the Agreement's "Disclaimer of Warranties" clause as a defense to Plaintiffs' breach of implied warranties claim and, therefore, the Agreement is not irrelevant to the parties' dispute.  In fact, Meyers' responsibilities depend directly on whether the Disclaimer of Warranties" clause is legally valid and enforceable. Ostensibly, at least, New York law governs that issue.

Pennsylvania has adopted § 187 of the Restatement (Second) of Conflict of Laws (1971), entitled "Law Of The State Chosen By The Parties."  *See Pennsylvania Dept. of Banking v. NCAS of Delaware, LLC*, 948 A.3d 752, 758 (Pa. 2008); *Miller v. Allstate Ins. Co.*, 763 A.2d 401, 403 (Pa. Super. 2000).  That provision states, in relevant part, as follows:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
>
> ***

Restatement (2d) Conflict of Laws § 187 (1971).

Thus, under subsection § 187(1), as quoted above, New York law governs the parties' "contractual rights and duties" if the "particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue."

6

Here, the "particular issue" before us is not the scope of rights or duties afforded by the disclaimer provision; in fact, both sides here seem to agree, at least implicitly, that, if the waiver provision is legally valid, it insulates Meyers from any liability on the remaining breach of warranty claim.  Instead, we are being called upon to determine whether that provision has any legal effect by virtue of satisfying the requirements of the Uniform Commercial Code.  It is not self-evident, at least to this Court, that this "particular issue" is one which the parties "could have resolved by an explicit provision in their agreement directed to that issue."  *See* § 187(1).

Even so, under subsection (2) of § 187, New York law will govern the claim against Meyers unless (a) New York has "no substantial relationship to the parties or the transaction *and* there is no other reasonable basis for the parties' choice," or (b) application of New York law would be contrary to the fundamental policy of a state which has a materially greater interest" than New York in the determination of the particular issue *and* which, under the rule of § 188, would be the state of applicable law in the absence of an effective choice of law by the parties.  Restatement (Second) of Conflict of Laws § 187(2) (emphasis added).  Under the circumstances here, New York clearly has a substantial relationship to the transaction between Plaintiffs and Meyers, since the Agreement was reached and signed in New York State and the Plaintiffs took possession of the vehicle there.  New York also has a substantial relationship to at least one of the parties, as Meyers RV has its principle place of business in New York, was organized under New York law, and is a citizen of that State.  Thus, exception (a) to § 187(2) does not apply.

The question therefore becomes whether subsection (b) to §187(2) prevents the application of New York law.  Under this provision, we must consider, for starters, whether another state has a "materially greater interest" than New York in the determination of the validity of the "Disclaimer of Warranties" provision and, if so, whether application of New York law would be contrary to the "fundamental policy" of that state relative to that "particular issue."  The only other state with a significant

7

interest in this aspect of the case is Pennsylvania – the state where the Plaintiffs have their residency and citizenship, where the vehicle is titled and registered, and where the catastrophic fire occurred.  Nevertheless, this Court does not find that Pennsylvania has a "materially greater" interest in the "particular [legal] issue" at hand than New York. This aspect of the case turns, as we have noted, on the legal validity of a warranty disclaimer clause and, more particularly, whether that clause comports with certain requirements of the Uniform Commercial Code.  Here, the disclaimer was made, and ostensibly agreed to, in the State of New York, and other aspects of the parties' agreement are to be determined in accordance with New York law.  Moreover, the party seeking to benefit from the disclaimer – Meyers – has its residency in New York.  No doubt Meyers regularly conducts business transactions using forms including the same (or similar) disclaimer language as that which is at issue here.  Therefore, the Court finds that, insofar as the validity of the warranty disclaimer clause is concerned, New York's interest is at least as significant, if not more so, than Pennsylvania's.

Moreover, it does not appear that application of New York law would be contrary to any fundamental policy of Pennsylvania relative to determination of the particular issue before us.  On the contrary, resolution of the present dispute turns on application of various provisions of the Uniform Commercial Code pertaining to "conspicuous" language (§ 1-201(10)), unconscionable contracts or clauses (§ 2-302), and the exclusion or modification of warranties (§ 2-316), which have been enacted in both states.  Importantly, the applicable provisions of New York's Uniform Commercial Code are, for all practical purposes, identical in language (if not in format) to the corresponding provisions of Pennsylvania's Uniform Commercial Code.  The applicable legal standards are both clear in principle and highly fact dependent.   In short, resolution of this dispute will depend not on any particular statutory provision or court ruling, but on the unique circumstances of the case.

This conclusion makes further analysis under § 187(2)(b) unnecessary.  For the reasons stated, I conclude that New York law governs the substantive issues relative to

8

Plaintiffs' claim against Meyers.  I note, however, that there is no substantial difference as between New York and Pennsylvania law insofar as the applicable controlling legal principles are concerned.

   2.   *The Claim Against Four Winds*

Unlike Meyers, Four Winds has no contractual agreement with the Plaintiffs involving a choice of law provision.  Plaintiffs still maintain that New York law should apply, however, while Four Winds argues for the application of Pennsylvania law.

Where the parties have not agreed upon a choice of law, Pennsylvania employs a two-step process to resolve choice-of-law questions.  *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007).  First, the court must determine if there is a real conflict.  *Id*. at 229-30.  There is no real conflict where the application of either state's law renders the same result.  *Id.; Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006).  Where there is no difference between the laws of the forum state and those of the foreign jurisdiction, the court may bypass the choice-of-law issue and rely interchangeably on the law of both states.  *Hammersmith*, 480 F.3d at 229-30.

On the other hand, if there is a conflict, the court proceeds to the second step and characterizes the conflict as "true," "false," or "unprovided for."  *Hammersmith*, 480 F.3d  at 230.  A "true" conflict exists where both states have an interest in applying their own law.  *Id.*  A "false" conflict exists when only one state has an actual interest in applying its law.  *Id*.  The situation is "unprovided for" when neither state has an interest in applying its own law.  *Id*.  "'A deeper analysis' is necessary only if both jurisdictions' interest would be impaired by the application of the other's laws (i.e., there is a true conflict)."  *Id.* (*citing Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970)).

Where a true conflict exists, the court must determine "which state has the greater interest in the application of its law."  *Hammersmith*, 480 F.3d at 231.  This inquiry employs a combination of "the approaches of both [the] Restatement II (contacts establishing significant relationships) and 'interest analysis' (qualitative appraisal of the

9

relevant States' policies with respect to the controversy).'" *Id. (citing Melville v. American Home Assurance Co.*, 584 F.2d 1306, 1311 (3d Cir.1978)).  This analysis involves more than a "mere counting of contacts."  *Id*.  The court must "weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the [particular] issue."  *Id*. (*citing Shields v. Consol. Rail Corp.*, 810 F.2d 397, 400 (3d Cir.1987)).

Resolution of the merits of Plaintiffs' claim against Four Winds turns on our application of several provisions of the Uniform Commercial Code pertaining to "conspicuous" language (§1-201(10)), unconscionable contracts or clauses (§ 2-302), and the exclusion or modification of warranties (§ 2-316).  We have already observed that, as to these provisions of the Code, the language of Pennsylvania's statutes is essentially identical to that of New York's.  Accordingly, as to the substantive legal principles, there is no conflict of law and we may refer to the law of New York and Pennsylvania interchangeably.[2]

However, the law of Pennsylvania and New York does differ in one important respect insofar as Plaintiffs' claims against Four Winds are concerned:  New York still

---

[2] The Court notes that, according to Court records, Four Winds is a Delaware Corporation with a principle place of business in Indiana. (*See* Four Winds' Answer With Affirmative Defenses [30] at ¶ 3.)  Four Winds has made no claim that either Delaware or Indiana have an interest in the application of their own legal principles. Nevertheless, to the extent such an interest exists, it does not change our analysis. The Court notes that the relevant provisions of Delaware's and Indiana's respective Uniform Commercial Codes are essentially identical to those of New York and Pennsylvania and, thus, no conflict of laws exists.  *See respectively* 13 Pa. C.S.A. § 2316 ("Exclusion or modification of warranties") and N.Y. U.C.C. Law § 2-316 (same) *and compare* DEL. CODE ANN. tit. 6, § 2-316 ("Exclusion or modification of warranties") and IND. CODE ANN.  § 26-1-2-316  (same). *See also* 13 Pa. C.S.A. § 1201(10) (defining the term "conspicuous") and N.Y. U.C.C. Law § 1-201(10) (same) *and compare* DEL. CODE ANN. tit. 6, § 1-201(10) (defining the term "conspicuous") and IND. CODE ANN. § 26-1-1-201(10) (same).  *See also* 13 Pa. C.S.A. § 2-302 ("Unconscionable Contract or Clause") and N.Y. U.C.C. Law § 2-302 (same) *and compare* DEL. CODE ANN. tit. 6, § 2-302 ("Unconscionable contract or clause") and IND. CODE ANN. § 26-1-2-302 (same).

requires privity of contract in order for a plaintiff to recover against a manufacturer for breach of the implied warranty of merchantability in a situation where only economic damages are involved, *see* N.Y. U.C.C. Law § 2-318 (McKinney's 2001); *Carcone v. Gordon Heating & Air Conditioning Co., Inc.*, 623 N.Y.S. 2d 679, 680 (N.Y. App. 1995), whereas Pennsylvania does not.  *See* 13 Pa. C.S.A. § 2318 (West 1984); *Powers v. Lycoming Engines*, 245 F.R.D. 226, 233 (E.D. Pa. 2007).  One court has variously described the policy interest behind the privity requirement as "protect[ing] 'remote manufacturers'" and "defer[ring] to contracting parties to determine the scope of the manufacturer's obligations and liability, using traditional contract principles where there is no damage to other property or personal injury.[ ]"  *Powers*, 245 F.R.D. at 234 and *id*. at n. 29 (describing the governmental interest of various states which maintain the privity requirement) (footnote omitted).  *See also Chysky v. Drake Brothers Company, Inc.*, 139 N.E. 576, 578 (N.Y. 1923.)("The general rule is that a manufacturer or seller of food, or other articles of personal property, is not liable to third persons, under an implied warranty, who have no contractual relations with him.  The reason for this rule is that privity of contract does not exist between the seller and such third persons, and unless there be privity of contract, there can be no implied warranty.").  On the other hand, Pennsylvania's interest in dispensing with the privity requirement is rooted in judicial economy and fairness concerns:

> In abolishing the privity requirement in all warranty actions four decades ago, the Pennsylvania Supreme Court determined that continuing such a requirement would "perpetuat[e] a needless chain of actions, whereby each buyer must seek redress from his own immediate seller, up the chain, until the actual manufacturer is eventually reached." *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848, 856 (1968).  It observed that the privity requirement ignored the commercial reality that the typical purchaser buys from a retail merchant who is usually no more than an "economic conduit" between the purchaser and the manufacturer of the defective product.  *Id.* at 853.

*Powers*, 245 F.R.D. at 233.  *See also id.* at 234 n.24 ("The public policy argument behind abolishing the privity requirement is that it promotes judicial economy to allow the end purchaser to bring an action directly against the manufacturer, avoiding the

unnecessary litigation that would be required if the purchaser were forced to bring an action against the dealer, who in turn could bring an action against the manufacturer.") (*citing* Barkley and Christopher Smith, The Law of Prod. Warranties, § 10:20 (West 2006)).

Nevertheless, the conflict as to privity would appear to be a false one.  Four Winds is not a New York corporation and, therefore, New York's interest in protecting its resident manufacturers from suit by a remote consumer is not implicated here.  On the other hand, Pennsylvania, as the situs of this lawsuit, has an interest in promoting judicial economy which could arguably be frustrated by application of New York's privity rule.  In addition, the purchasers here are Pennsylvania residents, and applying Pennsylvania law also further's the Commonwealth's interest in treating the relationship between purchaser and manufacturer in a more "commercially realistic" manner by allowing the Plaintiffs to sue Four Winds directly.  *See Kassab v. Central Soya*, 246 A.2d at 853.  Finally, two additional states that are conceivably interested in this issue – Delaware and Indiana, *see* note 2, *supra* – both, like Pennsylvania, have dispensed with the requirement of privity in suits premised on breach of implied warranty where only economic loss on the part of the consumer is involved.  *See Pack & Process, Inc. v. Celotex Corp.*, 503 A.2d 646, 659 (Del. Super. 1985) (denying summary judgment on breach of implied warranty claim, despite lack of privity); *Hyundai Motor America, Inc. v. Goodin*, 822 N.E. 2d 947, 959 (Ind. 2005) (vertical privity is not required between a consumer and a manufacturer as a condition to a claim by the consumer against the manufacturer for breach of the manufacturer's implied warranty of merchantability).  Accordingly, application of the Pennsylvania rule will also further the policy interests underlying these states' abolition of the privity requirement.

Accordingly, as to the issue of privity, this Court will apply the rule of Pennsylvania and allow the Plaintiffs to assert their claim against Four Winds.  As to the controlling substantive law, the law of New York and Pennsylvania is in all relevant aspects virtually identical and we will therefore refer to both interchangeably.

12

B.    The Warranty Disclaimer/Limitation Provisions

    *1.    Conspicuousness*

        a) MEYERS' WARRANTY DISCLAIMER CLAUSE

Section 2-316 of the Uniform Commercial Code governs the "Exclusion or Modification of Warranties" and states in relevant part:

> to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

N.Y. U.C.C. LAW § 2-316 (McKinney's 2001).  In this case, the disclaimer was in writing, so the focus of the dispute is on whether the disclaimer language was sufficiently "conspicuous."  The U.C.C. defines that term as follows:

> "Conspicuous":  A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it.  A printed heading in capitals (as: NON-NEGOTIABLE BILL OF LADING) is conspicuous.  Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color.  But in a telegram any stated term is "conspicuous".  Whether a term or clause is "conspicuous" or not is for decision by the court.

N.Y. U.C.C. LAW § 1-201(10) (McKinney's 2001).  Conspicuousness "is intended to indicate some of the methods of making a term attention-calling.  But the test is whether attention can reasonably be expected to be called to it."  *Ellis v. Fleetpride Store No. 396*, No. 08-31567, 2009 WL 2915264 at * 13 (N.Y. City Ct.  Aug. 17, 2009)(Table case)(citation omitted).

In this case, the Purchase Agreement consists of a single, double-sided page.  The Disclaimer Clause is found on the back side of the Purchase Agreement form, where the "**ADDITIONAL TERMS OF AGREEMENT**" are set forth in nine separate paragraphs.  The relevant paragraph, number 5, states as follows:

**5.   Disclaimer of Warranties.**  I UNDERSTAND THAT YOU EXPRESSLY DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND THAT YOU NEITHER ASSUME NOR AUTHORIZE ANY OTHER PERSON TO ASSUME FOR YOU ANY LIABILITY IN CONNECTION WITH THE SALE OF THE VEHICLE, except as otherwise provided in writing by YOU in an attachment to this Agreement or in a document delivered to ME when the vehicle is delivered.

**Limitation on Implied Warranties.**  Some States do not allow either (1) limitations on how long an implied warranty lasts or (2) the exclusion or limitation of incidental or consequential damages, so these limitations may not apply.

(Ex. B to Def.'s Mot. For Summ. Judg. [43-2] at p. 7.)

I find that the foregoing provision is both linguistically and stylistically "conspicuous" within the meaning of U.C.C. § 1-201(10) such that the disclaimer comports with the requirements of § 2-316(2).  The caption "**Disclaimer of Warranties**" is set apart from the surrounding text by typeface which is both in bold-face print and underlined.  The critical waiver language is distinguished from the surrounding text by virtue of appearing in all capital letters.  Moreover, the front of the Agreement contains language, directly above the Plaintiffs' signature line, stating, "I have read the terms on the back of this agreement and have received a complete copy of this agreement."  (Ex. B to Def.'s Mot. For Summ. Judg. [43-2] at p. 6.)

Plaintiffs object that the "Disclaimer of Warranties" heading contains the same bolded typeface (and underlining) as every other paragraph heading on the page.  They further object that the capitalized letters in Paragraph 5 do not appear in contrast to certain other parts of the Agreement, particularly Paragraph 6 ("**Price Changes**"), which consists of five subparagraphs all appearing in capitalized print, and parts of Paragraph 1.  While it is true that the capitalized print is not limited exclusively to Paragraph 5, I do not find that the presence of the additional capitalized language operates to obscure the relevant portions of the warranty disclaimer when the Agreement is viewed in its entirety.  While the topical headings of each paragraph are highlighted in like fashion, the Agreement's "**ADDITIONAL TERMS**" are set forth in relatively concise fashion on a

14

single page, and the relevant topics of each of the nine paragraphs are easily discerned.  Moreover, the capitalized font of the critical disclaimer language is set apart from the provisions immediately preceding and following it, which appear in lower case type.  The signature line on the front of the agreement appears directly below language requiring the purchaser to certify that he or she has read the back of the Agreement.  Although it has been said that the burden of preparing an effective disclaimer is a "heavy" one, *Minikes v. Admiral Corp.*, 266 N.Y.S.2d 461, 462 (Dist. Ct. 1966), I find that the Agreement here, taken as a whole, lays out the warranty disclaimer clause in a sufficiently conspicuous manner such that a reasonable person ought to have noticed it.

In *Travelers Ins. Companites v. Howard E. Conrad, Inc.,* 649 N.Y.S.2d 586, *587* (N.Y. A.D. 4th Dept. 1996), the court ruled that warranty disclaimer language was sufficiently conspicuous under circumstances somewhat similar to those here.  In *Traveler's*, the face of the agreement directly above the purchaser's signature contained the following language in red capital letters: "I, OR WE, HEREBY ACKNOWLEDGE RECEIPT OF A COPY OF THIS ORDER AND THAT I, OR WE HAVE READ THE BACK OF THIS AGREEMENT."  The front page of the agreement further provided that: "Buyer certifies that he/she has read the Terms and Conditions on the back of this document and agrees that they shall be incorporated as part of this Agreement."  The waiver provision on the back of the agreement stood out in capital letters and utilized a font size larger than that contained elsewhere on the back of the form, stating:  "EXCEPT TO THE EXTENT REQUIRED BY STATE LAW, SELLER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE."  The court found that, under these circumstances, "a reasonable person would notice the provisions 'when its type is juxtaposed against the rest of the agreement.'" *Id.* (citation omitted).  *See also Mollins v. Nissan Motor Co., Ltd.,* 836 N.Y.S.2d 494, 2007 WL 315352 at *5 (N.Y. Sup. Jan. 31, 2007) ("The exclusion or disclaimer of the warranty of merchantability contained in the lease herein

is conspicuous in that it specifically mentions merchantability and is in larger and contrasting type[.]  UCC § 1-201(10). The lease clearly and unequivocally excludes any warranties of merchantability.").  I reach the same conclusion based my review of the Purchase Agreement at issue here.

Plaintiffs refer this Court to two cases which I find distinguishable.  In *Hertz Commercial Leasing Corp. v. Transportation Credit Clearing House*, 298 N.Y.S. 2d 392 (N.Y. Civ. Ct. 1969), the court declined to enforce a warranty disclaimer which utilized type of the "same size and style of print, as a part of a much larger paragraph, and in the same size and style of type as the remainder of the contract."  *Id.* at 398.  Under those circumstances, the relevant disclaimer language could not be readily discerned from the surrounding text; it apparently was buried among language of the exact same type and style of print.  The same cannot be said in this case.  In *Nassau Suffolk White Trucks, Inc. v. Twin County Transit Mix Corp.*, 403 N.Y.S. 2d 322 (N.Y. App. Div. 2d Dept. 1978), the court found that the "[conspicuousness] requirement is obviously not satisfied by the clause in question, which appears in print which is no larger than any other print on the entire page and smaller than some."  *Id.* at 325.  Again, that is not the case here where the disclaimer clause, although not the exclusive provision appearing on the back of the Agreement in uniform capitalized type, is clearly larger and more prominent than most of the other language setting forth the "Additional Terms of Agreement."

In sum, the "Disclaimer of Warranties" provision in the Purchase Agreement is sufficiently conspicuous as to satisfy the requirements of U.C.C. § 2-316(2).  Accordingly, Plaintiffs cannot avoid application of the disclaimer on that basis.

b)  Four Winds' Warranty Limitations/Disclaimer Clause

Section 2-316 of Pennsylvania's Uniform Commercial Code is, in all relevant aspects, identical to New York's version, requiring that any exclusion or modification of the implied warranty of merchantability mention that term specifically and that, "in case

16

of a writing," the language be "conspicuous."  13 Pa. C.S.A. § 2316 (West 1984).

Moreover, Pennsylvania's definition of "conspicuousness" is virtually identical to New

York's definition, *to wit*:

> "Conspicuous." With reference to a term, means so written, displayed or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:
>
> > (i) A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font or color to the surrounding text of the same or lesser size.
> >
> > (ii) Language in the body of a record or display in larger type than the surrounding text, in contrasting type, font or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

13 Pa. C.S.A. § 1201(10) (West 2010 pocket part).

Four Winds' New Recreational Vehicle Limited Warranty consists of three pages

setting forth topical six different topical headings, each in enlarged, bolded print, *to wit*:

"**WARRANTY COVERAGE," "WHAT IS COVERED," "HOW TO GET SERVICE,"**

"**WHAT IS NOT COVERED," "LIMITATIONS AND DISCLAIMERS OF IMPLIED**

**WARRANTIES," AND "LEGAL REMEDIES/ARBITRATION."**  Under the topic

"**LIMITATIONS AND DISCLAIMERS OF IMPLIED WARRANTIES"** appears the

following language:

> The following limitations and disclaimers apply to the original purchaser of the RV, any person to whom the RV is transferred and any person who is an intended or unintended user or beneficiary of the RV.
>
> **ANY IMPLIED WARRANTY ARISING BY WAY OF STATE OR FEDERAL LAW, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR ANY IMPLIED WARRANTY OF FITNESS, ARE LIMITED IN DURATION TO THE LENGTH OF THIS LIMITED WARRANTY AND ARE LIMITED IN SCOPE OF COVERAGE TO THOSE PORTIONS OF THE MOTOR HOME COVERED BY THIS LIMITED WARRANTY.  PERFORMANCE OF REPAIRS OR NEEDED ADJUSTMENTS IS THE EXCLUSIVE REMEDY UNDER THIS LIMITED WARRANTY OR ANY IMPLIED WARRANTY.**  Four Winds makes no warranty of any nature beyond that contained in this limited warranty.  No one has the authority to enlarge, amend or modify this limited warranty. The dealer is not Four Winds's agent, but is an independent entity.
>
> In addition, **Four Winds SHALL NOT BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES THAT MAY RESULT**

17

**FROM BREACH OF THIS LIMITED WARRANTY OR ANY IMPLIED WARRANTY.  THIS EXCLUSION OF CONSEQUENTIAL AND INCIDENTAL DAMAGES SHALL BE INDEPENDENT OF ANY FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED WARRANTY, AND THIS EXCLUSION SHALL SURVIVE ANY DETERMINATION THAT THIS LIMITED WARRANTY OR ANY IMPLIED WARRANTY HAS FAILED OF ITS ESSENTIAL PURPOSE.**

Some states do not allow limitations on how long an implied warranty lasts, or the exclusion or limitations of incidental or consequential damages.  Therefore, the above limitations may not apply to you.

(Ex. E to Mot. for Summ. Judg. [41-5] at p. 3.)

Plaintiffs do not appear to challenge the conspicuousness of Four Winds' warranty limitations/disclaimer clause.[3]  In any event, though, I find that the relevant language easily satisfies the requirements of U.C.C. § 2-316(2) in that the warranty document is not unduly lengthy, the topical limitations/disclaimer heading is easily discernible, and the limiting language is distinguished from other language in the document by virtue of the fact that it is the only provision set forth in enlarged, bolded, uppercase print.  The "**Limitations and Disclaimer of Implied Warranties**" provision is therefore sufficiently conspicuous when compared to the surrounding text, such that a reasonable person against whom it is meant to operate would have noticed it.  *See Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 259 (Pa. Super. 1997) ("Under Pennsylvania law, factors to be considered in determining whether a reasonable person should have noticed a warranty disclaimer include: 1) the disclaimer's placement in the document, 2) the size of the disclaimer's print, and 3) whether the disclaimer was highlighted by being printed in all capital letters or in a type style or color different from the remainder of the document.") (citation omitted).

---

[3] Plaintiffs do challenge the language in the warranty insofar as it relates to the one-year limitations period on claims brought under the warranty.  As to this aspect of the Four Winds' warranty, Plaintiffs contend that the language is not sufficiently conspicuous.  However, the Court is not aware of any legal authority requiring that this type of provision satisfy § 2-316's conspicuousness requirement, and Plaintiffs have cited none.  In any event, however, my ultimate conclusion that the warranty's "Limitations and Disclaimer of Implied Warranties" clause is valid and enforceable renders this argument moot.

2.    *Unconscionability*

Plaintiffs next contend that, even if the warranty limitations and disclaimer clauses were sufficiently conspicuous, they were unconscionable. "As a general [rule], unconscionability 'requires some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Rubin v. Telemet America*, 698 F. Supp. 447, 450 (S.D.N.Y.1988) (*quoting State v. Avco Financial Services of New York*, 406 N.E. 2d 1075 (N.Y. 1980)). *See also Witmer v. Exxon Corp.*, 495 Pa. 540, 551, 434 A.2d 1222, 1228 (1981) (same) (*citing Williams v. Walker-Thomas Furniture Company*, 350 F.2d 445, 449 (D.C. Cir.1965).

Section 2-302 of the Uniform Commercial Code addresses "Unconscionable Contracts or Clauses" as follows:

(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

N.Y. U.C.C. LAW § 2-302 (McKinney's 2001). Section 2-302 of Pennsylvania's Uniform Commercial Code, though formatted slightly differently from that of New York, is essentially identical in substance.[4] The Official Comment notes that the "basic test" for

---

[4] Pennsylvania's statute reads:

  **(a) Finding and authority of court**.– If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made, the court may:

    (1) refuse to enforce the contract;

unconscionability is "whether, in light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." U.C.C. § 2-302, Official Comment ¶1. "The principle is one of the prevention of oppression and unfair surprise... and not of disturbance of allocation of risks because of superior bargaining power." *Id*. Generally, the party claiming unconscionability bears the burden of proof on that issue. *See King's Choice Neckwear, Inc. v. Pitney Bowes, Inc.*, No. 09 Civ. 3980 (DLC), 2009 WL 5033960 at *6 (S.D.N.Y. Dec. 23, 2009) (citing cases); *Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 264 (Pa. Super. 1997).

Based on the facts adduced here, I find that Plaintiffs have failed to meet their burden of demonstrating unconscionability. While it is true that the transaction in this case involved an inequality of bargaining power as between the Plaintiffs and the Defendants, that fact alone does not make the provisions at issue unconscionable. *See Borden, Inc.* 701 A.2d at 264 ("[I]t is settled law that mere unequal bargaining power between the parties to a contract does not render the contract, or a provision thereof, unconscionable.") Although the Plaintiffs may not have been sophisticated merchants, nothing suggests that they suffered any limitations in terms of their ability to

---

(2) enforce the remainder of the contract without the unconscionable clause; or

(3) so limit the application of any unconscionable clause as to avoid any unconscionable result.

  **(b) Evidence by parties**. – When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

13 Pa. C.S.A. § 2302 (West 1984).

capably read and understand the relevant provisions of the warranty limitations and disclaimer provisions, which are common features in transactions involving the sales of vehicles. The record here shows that the Plaintiffs owned passenger vehicles and both had jobs outside the home. (Jordan Depo. [48-1] at 7-9, 26.) Mr. Jordan professed to have some degree of mechanical experience involving work on automobiles and/or trucks, and he was able to understand and act on a prior recall notice that he had received relative to the RV. (*Id.* at 29.) He had previously owned another RV during the 1960's. (*Id.* at 12.)

Moreover, while the provisions at issue here were, in each case, part of a form agreement, the record does not establish a lack of meaningful choice on the part of the Plaintiffs. Mr. Jordan began his search for a suitable Recreational Vehicle in 2003. (Jordan Depo. [48-1] at p. 13.) While shopping for an RV, Mr. Jordan professed to have "looked at every brand there was in three states," visiting various dealerships throughout Ohio, Pennsylvania and New York and attending, in one case, an Recreational Vehicle show. (*Id.* at p. 14.) The terms of the respective warranties apparently were not the driving factor in his final decision. Instead, he chose Four Winds' Infinity 2004 model because he "liked the way it looked" on both the outside and inside. (*Id.* at 14-15, 20.) As Mr. Jordan testified, "We told every dealer when we went in that if we got one that caught our eye, that is the one that we were going to buy." (*Id.* at 14.) In the course of the purchase, the Jordans received a substantial discount from the $143,323.00 sticker price in the amount of $42,096.00. (*Id.* at 17-18.)

Further, while the contract terms may have been favorable to the Defendants, it cannot be said that they were unreasonably favorable to the point of involving oppression or unfair surprise. Warranty limitations or exclusions are fairly commonplace features in the commercial vehicle trade and thus, one might expect a reasonable purchaser, particularly one who is also an experienced vehicle owner, to have an interest in investigating basic warranty information, including any applicable limitations. The Court has previously found that the warranty limitations and disclaimers

in both documents were sufficiently conspicuous such that a reasonable person against whom they were meant to operate would have noticed them.  In fact, Mr. Jordan professed that, on the date that he signed the Purchase Agreement with Meyers (*i.e.*, May 22, 2004), he read both sides of the Agreement and understood that, by signing it, he would be contractually bound to make the purchase.  (*Id*. at 15-17.)

Plaintiffs have argued that they lacked any meaningful choice relative to the terms of the limited warranty they received from Four Winds, as they did not take possession of the vehicle or receive the warranty booklet and ownership manual until June 12, 2004 after they had already signed the purchase agreement and paid the full balance due on the RV.  However, the record belies this assertion, as Mr. Jordan clearly stated in his deposition that the first time he discussed the warranty covering the vehicle was on May 22, 2004.  (Jordan Depo. at 18.)  Although he lacked a specific recollection on the point, he felt "sure" that he had actually seen the written warranty as of May 22, 2004 when he signed the Purchase Agreement with Meyers, and he felt "sure" he had read it at that time.  (*Id*. at 19.)

Plaintiffs rely on several cases which they believe support their unconscionability claim.  While the Court recognizes these rulings, I conclude that none of them controls the outcome of this case, which is driven instead by the particular facts at hand.

In *Walsh v. Ford Motor Co.*, 298 N.Y.S. 2d 538 (N.Y. Sup. Ct. 1969), the court found a warranties disclaimer/limitation clause unconscionable where it operated so as to prevent the purchaser from recovering any damages for personal injury which he sustained on the date of purchase as a result of a defect in the vehicle.  The court noted that this limitation, if "intended to exclude plaintiff from recovering damages for his personal injury" was prima facie unconscionable pursuant to U.C.C. § 2-719.[5]  *Id*.

---

[5] Section 2-719 provides, in relevant part, that "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.  Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable *but limitation of damages where the loss is commercial is not.*"

Notably, the defendants in *Walsh* had failed to rebut the statutory presumption of unconscionability, a presumption which does not pertain here, where only economic loss is involved.  *See* N.Y. U.C.C. LAW § 2-719(3) (McKinney's 2001).

A similar situation was involved in *Sarfati v. M.A. Hittner & Sons, Inc.*, 318 N.Y.S.2d 352 (N.Y. App. Div. 1970), wherein the manufacturer of a defective vehicle was sued for personal injuries which were proximately caused by the defect.  The court found that the manufacturer had waived the affirmative defense that its limitations and/or disclaimer of warranties barred any liabilities on cross-claims asserted by the lessor of the vehicle.  Citing *Walsh*, the court further stated that "it has been held ... that such a disclaimer as applied to purchasers of automobiles is unconscionable and against public policy."  318 N.Y.S. 2d at 353.  Again, however, the result reached in *Safari* seems to have been tied to the presence of personal injuries, which are not present in this case.

In *Fusco v. General Motors Corp.*, 485 N.Y.S.2d 431 (N.Y. Co. Ct. 1984), the plaintiffs sought to recover for emotional harm they allegedly suffered as a result of riding in a negligently manufactured car which malfunctioned during operation.  The court ruled that, while the plaintiffs could not recover for their purely emotional injury, they were entitled to a hearing so as to determine whether a warranty clause was unconscionable where it purported to exclude consequential damages such as car rental expenses incurred during the warranty repairs.  Unlike in *Fusco*, where the court apparently felt it needed to develop the record on the issue of unconscionability, this case presents a sufficiently developed record – including the Plaintiffs' depositions and documentation evidencing the transactions in question –  which precludes the necessity of any further hearing.

Finally, Plaintiffs refer the Court to *Oddo v. General Motors Corp.*, 22 UCC Rep.

---

N.Y. U.C.C. Law § 2-719(3) (McKinney's 2001) (emphasis added).

Serv. 1147, 1977 WL 25579 (N.Y. Sup. Ct. Oct. 31, 1977), wherein the court refused to enforce as unconscionable a warranty provision on a new automobile which would have precluded the purchaser from rescinding the sale and receiving his money back and would have limited him instead to receiving the repairs authorized under the warranty. In *Oddo*, the plaintiff's luxury car had burst into flames a mere 17 miles after he had driven the vehicle off the dealer's lot, leading the court to conclude that the incident constituted a breach of contract to make proper delivery of the product.  In addition, the court observed that the manufacturer's warranty was not part of the contract of sale, but had only been delivered with the car after the plaintiff made full payment.  Under these circumstances, the court declined to enforce the warranties limitations, finding the provisions unconscionable.  The circumstances in *Oddo*, however, can be distinguished from the facts at bar.  First and foremost, the record here suggests that the Jordans, unlike the plaintiff in *Oddo*, had an opportunity to discuss and review the terms of the manufacturer's warranty prior to (or at least contemporaneous with) signing the Purchase Agreement and prior to taking delivery.  Thus, the circumstances here allowed for a greater degree of choice on the part of the purchaser, because the Jordans could conceivably have walked away from the transaction if they were dissatisfied with the warranty terms.  Moreover, the circumstances under which the RV malfunctioned in this case were not so extreme as would lead this Court to view the transaction as a breach of the Defendants' duty to make proper delivery of the vehicle. *Oddo*, therefore, does not dictate the outcome of this case.

For all of the foregoing reasons, I find that the provisions at issue here were not unconscionable within the meaning of U.C.C. § 2-302.  Because the warranty limitations and disclaimer provisions comport with the mandates of U.C.C. § 2-316 and are not unconscionable, they operate effectively so as to bar the Plaintiffs' breach of warranties claims.

## IV.  CONCLUSION

Based upon the foregoing discussion, the Defendants' motions for summary judgment will be granted.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JACK JORDAN and LYN JORDAN,          )
                                     )
              Plaintiffs,                     )
        v.                                )
                                     )          Case No. 1:08-cv-129-SJM
FOUR WINDS INTERNATIONAL,            )
INC., FOUR WINDS INTERNATIONAL       )
CORPORATION and MEYERS RV            )
CENTERS, LLC. and ED SHULTS          )
CHEVROLET, INC.,                     )
                                     )
              Defendants.                     )

## ORDER OF JUDGMENT

AND NOW, *to wit*, this 31st day of March, 2010, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS ORDERED that the Motion for Summary Judgment [41] filed on behalf of Defendants Four Winds International, Inc. and Four Winds International Corporation be, and hereby is, GRANTED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment [43] filed on behalf of Meyers RV Centers, LLC be, and hereby is, GRANTED.

JUDGMENT is hereby entered as to Count IV of the Amended Complaint in favor of DEFENDANTS, Four Winds International, Inc., Four Winds International Corporation, and Meyers RV Centers, LLC. and against PLAINTIFFS, Jack and Lyn Jordan.


                               s/    <u>Sean J. McLaughlin</u>

                                    SEAN J. McLAUGHLIN
                                    United States District Judge


cc:    All counsel of record.